IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| Fariba Waldrop, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. AW 10-cv-0328 |
| | * | |
| Science Applications International Corporation, | * | |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

*************************************************************************

**MEMORANDUM OPINION**

Plaintiff Fariba Waldrop ("Waldrop") brings this action against Defendant Science Applications International Corporation ("SAIC") alleging discrimination on the basis of national origin and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.* ("Title VII"), Md. Code Article 49B (2009) ("Article 49B"), and Montgomery County Code, Chapter 27, Section 27-1 *et seq.*, as authorized by Article 49B, Section 42 of the Md. Code ("Chapter 27"). Plaintiff Waldrop also alleges intentional infliction of emotional distress and negligent supervision and retention. Pending before the Court is Defendant's Motion to Dismiss Counts VII and VIII of Plaintiff's Complaint (Doc. No. 14). The Court has reviewed the entire record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss Counts VII and VIII of Plaintiff's Complaint.

I. **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff Waldrop is a female of Iranian ancestry who has worked for SAIC for

1

twenty-three years. In October 2007, Plaintiff joined the National Institutes of Health's ("NIH") project for the National Heart, Lung and Blood Institute ("NHLBI") as a Deputy Director.[1] Plaintiff alleges that as soon as she joined the NHLBI project Kathleen McCormick ("Ms. McCormick"), the Project Director, made numerous inappropriate remarks relating to Plaintiff's national origin. According to Plaintiff, in December 2007 she was singled out by Ms. McCormick for additional training on the English language, resulting in Plaintiff purchasing English grammar software with her own funds. Plaintiff also alleges that in December 2007 Ms. McCormick made her wear blue gilded sunglasses at a staff meeting to embarrass Plaintiff for being three to five minutes for the meeting. Plaintiff complained about Ms. McCormick's actions to Bach Nguyen ("Mr. Nguyen"), an NIH Program Manager, and Ms. McCormick was reprimanded as a result. Ms. McCormick allegedly began retaliating against Plaintiff for her complaint to Mr. Nguyen, refusing to communicate with Plaintiff in meetings. In May 2008, Mr. Nguyen informed Plaintiff that SAIC was removing her as the Deputy Director of the NHLBI project.

On February 9, 2010, Waldrop filed suit in the Circuit Court for Montgomery County, Maryland for the following causes of action: discrimination based on national origin in violation of Title VII (Count I), Article 49B (Count II), and Chapter 27 (Count III); retaliation for protected activity in violation of Title VII (Count IV), Article 49B (Count V), and Chapter 27 (Count VI); negligent supervision and retention (Count VII); and intentional infliction of emotional distress (Count VIII). On February 9, 2010,

---

[1] It appears that Plaintiff joined a team of SAIC employees who were working on a National Institutes of Health Project for the National Heart, Lung and Blood Institute.

2

Defendant SAIC removed Plaintiff Waldrop's case to this Court. Now pending before the Court is Defendant's Motion to Dismiss Counts VII and VIII of Plaintiff's Complaint.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). In two recent cases, the United States Supreme Court clarified the standard applicable to Rule 12(b)(6) motions. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Those cases make clear that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 566 n.3 (2007). That showing must consist of at least "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

In its determination, the Court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1985), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th

Cir. 1979). In addressing a motion to dismiss, a court should first review a complaint to determine what pleadings are entitled to the assumption of truth. *See Iqbal*, 129 S. Ct. at 1949-50. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949. Indeed, "the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Id*. at 1954. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*.

### III. ANALYSIS

#### A. Plaintiff's Negligent Supervision and Retention Claim

Count VII of Plaintiff's Complaint asserts a claim for negligent supervision and retention. A claim for negligent supervision and retention requires a plaintiff to show:

> [T]hat her injury was caused by the tortious conduct of a coworker, that the employer knew or should have known by the exercise of diligence and reasonable care that the coworker was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the [p]laintiff's injuries.

*Bryant v. Better Business Bureau*, 923 F. Supp. 720, 751 (D. Md. 1996) (citations omitted). The claims of negligent supervision and retention are "derived from the common law," *Hammond v. Taneytown Volunteer Fire Co.*, No. 09-0746, 2009 U.S. Dist. LEXIS 95183, at *13 (D. Md. Oct. 13, 2009); *Demby v. Preston Trucking Co., Inc.* 961 F. Supp. 873, 881 (D. Md. 1997), and, thus, "may only be predicated on common law causes of action." *Id.* at 882. It is well established that Title VII violations "may not form the predicate for claims of negligent supervision and retention," *id*., because "[s]uch claims were not actionable at common law in Maryland." *Bryant*, 923 F. Supp. at 751.

4

This Court has also recognized that "common law negligence claims also may not be predicated on violations of the Maryland code." *Templeton v. First Tennessee Bank*, No. 09-3280, 2010 U.S. Dist. LEXIS 54982, at *15 (D. Md. June 3, 2010).

Plaintiff's negligent supervision and retention claim is based on alleged violations of Title VII, Article 49B of the Maryland Code, and Chapter 27 of the Montgomery County Code. A cause of action under Title VII, Article 49, or Chapter 27 will not support a claim of negligent supervision and retention because such claims must be based on a common law injury, not an injury under a federal or state statute. *See Bryant*, 751 F. Supp. at 751; *Templeton*, 2010 U.S. Dist. LEXIS 54982, at *15. Accordingly, the Court must dismiss Count VII of the Complaint.

### B. Plaintiff's Intentional Infliction of Emotional Distress Claim

Count VIII of the Complaint alleges that SAIC is liable for intentional infliction of emotional distress. Defendant SAIC seeks to dismiss this claim on the ground that: (1) Plaintiff failed to plead facts sufficient to show that conduct occurred which was extreme and outrageous; and (2) Plaintiff failed to plead severe emotional distress with particularity. After reviewing the record, the Court believes that Plaintiff failed to put forth sufficient facts to make out a *prima facie* case for intentional infliction of emotional distress. Accordingly, Plaintiff's claim cannot survive Defendant's Motion to Dismiss.

#### 1. Prima Facie Case

Recovery under the theory of intentional infliction of emotional distress "has been severely limited in Maryland." *Demby*, 961 F. Supp. at 882. To sustain a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3)

there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. *Id.* "Each element must be pled and proved with specificity," *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002), and a deficiency in any element is fatal to a claim for intentional infliction of emotional distress. *See Foor v. Juvenile Serv. Admin.*, 552 A.2d 947, 959 (Md. 1989).

### 2. Extreme and Outrageous Conduct

To establish the requirement of "extreme and outrageous" conduct, Plaintiff must show that "the behavior 'was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Gennell v. Denny's Corp.*, 378 F. Supp. 2d 551, 560 (D. Md. 2005) (quoting *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)).

Plaintiff advanced the following allegations in support of her claim that Defendant SAIC's behavior amounts to "extreme and outrageous" conduct:

A. Plaintiff's supervisor made "numerous inappropriate remarks relating to [Plaintiff's] national origin," such as "[w]e have a diverse group," "we are dealing with diverse cultures," and "some of you can't even write an email." (Compl. ¶¶ 12, 14.)

B. Plaintiff was "singled out for additional training in the English language." (Compl. ¶ 14.)

C. Plaintiff was made to wear "blue gilded sunglasses at a staff meeting to embarrass [Plaintiff] for being 3-5 minutes late for the meeting." (Compl. ¶ 15.)

D. Plaintiff's supervisor "refus[ed] to communicate with [Plaintiff] in meetings." (Compl. ¶ 18.)

Plaintiff also maintains that the employer-employee relationship is relevant in determining whether conduct rises to the level of extreme and outrageous. (Doc. No. 16

at 7-8).  The Court recognizes that "the employment relationship is a factor to be considered when analyzing whether an employer's behavior was so outrageous that he or she has committed the tort of intentional infliction of emotional distress."  *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby*, 607 A.2d 8, 25 (Md. 1992).  But courts do not "lower the threshold for determining liability whenever the parties are employer and employee.  The conduct must still reach the same degree of outrageousness if an employee is to prove that his or her employer committed this tort."  *Id*. at 26.

While Defendant's conduct is reprehensible, it does not rise to the level of outrageousness or extremity required to prove intentional infliction of emotional distress.  "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Gennell*, 378 F. Supp. 2d at 560 (internal quotation marks omitted).  Making inappropriate comments regarding Plaintiff's national origin, requiring Plaintiff to complete training on the English language, and refusing to communicate with Plaintiff during staff meetings are the types of "mere insults and indignities" that are insufficient to support a claim for intentional infliction of emotional distress.  These actions do not describe the type of behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Gennell*, 378 F. Supp. 2d at 560; *cf. Figueriedo-Torres v. Nickel*, 584 A.2d 69 (1991) (behavior of psychologist who, while acting as plaintiff's and his wife's marriage counselor, had sexual relations with the plaintiff's wife, was sufficiently outrageous); *B.N. v. K.K.*, 538 A.2d 1175 (1988) (intentional exposure of plaintiff to transmission of herpes was outrageous); *Young v. Hartford Acc. & Indem.*, 492 A.2d 1270 (1985)

7

(insurer's insistence that plaintiff submit to a psychiatric examination calculated to harass the plaintiff and to either force her to abandon her claim or to commit suicide was deemed outrageous).

Moreover, with regard to the sunglasses incident, such behavior, while unprofessional, inappropriate and embarrassing, does not constitute the type of egregious conduct necessary for intentional infliction of emotional distress. Maryland courts considering this tort in the employment context have found allegations of far more egregious conduct insufficient to establish the extreme and outrageous element of the *prima facie* case of intentional infliction of emotional distress. *See, e.g.*, *Beye v. Bureau of Nat'l* Affairs, 477 A.2d 1197, 1204-05 (Md. Ct. Spec. App. 1984) (holding claim for intentional infliction of emotional distress "woefully inadequate" and "far short of establishing any of the four elements" when plaintiff alleged his supervisors gave him poor performance ratings, "threatened to fire him, harassed him and physically assaulted him," in addition to passing him over for promotion and deceiving him into resigning), *cert. denied*, 484 A.2d 274 (Md. 1984); *see also Arbabi*, 205 F. Supp. 2d at 466 (noting that workplace harassment "almost never rises to the level of outrageousness…as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law"). Accordingly, Plaintiff has failed to allege the type of extreme and outrageous conduct necessary to prevail on a claim for intentional infliction of emotional distress.

### 3. Severe Emotional Distress

Even assuming that Plaintiff could establish that Defendant's conduct was extreme and outrageous, the Court must still dismiss her claim because she has failed to

sufficiently allege that she suffered severe emotional distress. *See Templeton*, 2010 U.S. Dist. LEXIS 54982, at *17 (granting motion to dismiss where the plaintiff alleged that she suffered "severe mental anxiety" and "severe mental distress for which she inured medical costs," holding that "[w]ithout more, [the plaintiff's] allegations are, as a matter of law, insufficient to constitute severe emotional distress"); *Ragland v. A.W. Indus.*, No. 08-1817, 2009 U.S. Dist. LEXIS 71889, at *34 (D. Md. Aug. 13, 2009) (granting motion to dismiss where the plaintiff made general allegation that he suffered "severe emotional distress" without providing more information about the degree of his distress). To prove that she suffered severe emotional distress, Plaintiff must show "a severely disabling emotional response, so acute that no reasonable man could be expected to endure it." *Gennell*, 378 F. Supp. 2d at 560 (internal quotations marks omitted). A plaintiff must also "plead specific facts regarding the nature, intensity, and duration of the alleged emotional trauma." *Chin v. Wilhelm*, No. 02-1551, 2006 U.S. Dist. LEXIS 13101, at *31 (D. Md. Mar. 24, 2006) (citing *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 113 (Md. 2000)).

Plaintiff alleges that she has suffered from "severe emotional distress and mental anxiety." (Compl. ¶ 50.) However, Plaintiff failed to plead with particularity what emotional distress she suffered, how long it lasted, how severe it was, or whether she sought medical treatment. As such, Plaintiff has failed to allege with particularity sufficient facts to show that she suffered the requisite mental distress to maintain a cause of action for intentional infliction of emotional distress. *See Asafo-Adjei v. First Sav. Mortg. Corp.*, No. 09-2184, 2010 U.S. Dist. LEXIS 16986, at *14 (D. Md. Feb. 25, 2010) (dismissing the plaintiff's intentional infliction of emotional distress claim with prejudice

9

because the plaintiff "fail[ed] to identify which defendants caused his emotional distress or describe with particularity the emotional distress that he allegedly suffered"). Accordingly, Plaintiff is unable to establish a *prima facie* case.

Because Plaintiff fails to make out a *prima facie* case for intentional infliction of emotional distress, the Court will dismiss Count VIII of the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's Motion to Dismiss Counts VII and VIII of the Plaintiff's Complaint. A separate Order shall follow.

| | |
|---|---|
| July 12, 2010 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |