IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| FARIBA WALDROP, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 10-cv-00328-AW |
| | * | |
| SCIENCE APPLICATIONS | * | |
| INTERNATIONAL | * | |
| CORPORATION, | * | |
| Defendant. | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Memorandum Opinion**

Plaintiff Fariba Waldrop ("Waldrop") brings this action against Defendant Science

Applications International Corporation ("SAIC") alleging discrimination on the basis of national

origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title

VII") (Count I), Title 20 of the State Government Article of the Annotated Code of Maryland,

Md. Code Ann., State Gov't , §§ 20-601, *et seq.* ("Title 20")[1] (Count II), and Chapter 27 of the

Montgomery County Code, as authorized by Title 20 (Count III). Waldrop also alleges

retaliation under Title VII (Count IV), Title 20 (Count V), and Chapter 27 (Count VI). The Court

previously granted SAIC's motion to dismiss Waldrop's claims of intentional infliction of

emotional distress (Count VIII) and negligent supervision and retention (Count VII). *See* Doc.

No. 19.  Currently pending before the Court is SAIC's motion for summary judgment on all

remaining claims. *See* Doc. No. 35. The Court has reviewed the entire record, as well as the

pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md.

---

[1]Waldrop's initial claim alleges a violation of Article 49B. However, the former Article 49B was re-codified as Title
20 of the State Government Article. Accordingly, all references herein will be to Title 20.

2010). For the reasons set forth below, the Court GRANTS Defendant's motion for summary judgment.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The following facts are adopted from the Court's prior memorandum opinion with changes as necessary to reflect subsequent developments in the discovery record. Plaintiff Waldrop is a female of Iranian ancestry who has worked for SAIC for almost 25 years. In October 2007, Waldrop joined the National Institutes of Health's ("NIH") project for the National Heart, Lung and Blood Institute ("NHLBI") as a Deputy Director. Waldrop alleges that as soon as she joined the NHLBI project, Kathleen McCormick ("McCormick"), the Project Director, made numerous inappropriate remarks relating to Waldrop's national origin. McCormick was not Waldrop's supervisor but had primary responsibility for the project. According to Waldrop, whenever Waldrop tried to discuss issues relating to the project with McCormick, McCormick responded, "We have a diverse group," and "We are dealing with diverse cultures."

Waldrop also alleges that in December 2007, McCormick made her wear blue gilded sunglasses at a staff meeting to embarrass Waldrop for being a few minutes late for the meeting. When another non-Iranian employee was late, Waldrop asked if that employee would have to wear the glasses, but McCormick responded, "No, that's only for you." Beginning in late 2007 or early 2008, Waldrop began complaining about McCormick's actions to Bach Nguyen ("Nguyen"), an NIH Program Manager who served as Waldrop's direct supervisor. In December 2007, Nguyen reported Waldrop's first complaint to Waldrop's "next higher level manager"

Michael Eddings ("Eddings"), and McCormick was reprimanded as a result. Shortly thereafter, in January 2008, Waldrop was promoted to be "technical lead" for the project.

McCormick allegedly began retaliating against Waldrop for her complaint to Nguyen, refusing to communicate with Waldrop in meetings. Then, on May 6, 2008, Eddings removed Waldrop from her role as Deputy Director of the NHLBI project. SAIC reassigned Waldrop's work to Russ Reiling, the Assistant Vice President and Program Director for Informatics, who absorbed Waldrop's duties as 25-to-30 percent of his workload. Waldrop alleges that she lost income of $84,754.12 due to her removal, before she was able to find a new position at SAIC. Waldrop has since been promoted from her position as Deputy Director and is working as a Project Manager at SAIC.

On February 9, 2010, Waldrop filed suit in the Circuit Court for Montgomery County, Maryland for the following causes of action: discrimination based on national origin in violation of Title VII (Count I), Title 20 (Count II), and Chapter 27 (Count III); and retaliation for protected activity in violation of Title VII (Count IV), Title 20 (Count V), and Chapter 27 (Count VI); negligent supervision and retention (Count VII); and intentional infliction of emotional distress (Count VIII). SAIC removed Waldrop's case to this Court. On July 13, 2010, the Court granted SAIC's motion to dismiss Counts VII and VIII from this case. *See* Doc. No. 19. Now pending before the Court is SAIC's motion to dismiss the remaining counts of Waldrop's complaint.

## II.     STANDARD OF REVIEW

Summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or other similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, a party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## III.     ANALYSIS

Waldrop asserts claims under Title VII for retaliation and discrimination based on national origin. After reviewing the record, the Court does not believe Waldrop's claims can survive summary judgment. The record shows that Waldrop's communications problems with

the client and with her "next higher level manager" Eddings,[2] rather than a discriminatory or retaliatory intent, led to Waldrop's removal from her Deputy Project Director position.

A.        Discrimination on the Basis of National Origin

The Court first addresses Waldrop's claim that her rights under Title VII were violated when she was removed from her position as Deputy Project Director because of national origin discrimination. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 200e-2(a)(1). Waldrop, who was born in Iran, argues that SAIC reassigned her from the project because of her national origin. Waldrop may prove this alleged violation of Title VII in either of two ways: (1) by "using any direct or indirect evidence relevant to and sufficiently probative" of discriminatory purpose, or (2) by using the burden-shifting approach outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Waldrop contends that her claim succeeds under the *McDonnell Douglas* burden-shifting approach. Under this scheme, the plaintiff must first must establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp.*, 411 U.S. at 802.  To establish a *prima facie* case, Waldrop must show that: (1) that she is in a protected class; (2) she suffered an adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position

---

[2]Nguyen was Waldrop's direct supervisor, while Eddings was Waldrop's "next higher level manager" after Nguyen. Eddings was the manager who ultimately made the decision to remove Waldrop from her position as Deputy Project Director.

remained open or was filled by similarly qualified applicants outside the protected class. *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011). If the plaintiff meets this burden, the defendant must present a legitimate, nondiscriminatory reason for the challenged conduct. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

SAIC argues that Waldrop cannot establish a prima facie case because Waldrop failed to perform her duties at a level that met SAIC's legitimate expectations at the time of her removal. Moreover, SAIC argues that Waldrop cannot show that her position remained open or was filled by similarly qualified applicants outside the protected class because she was not replaced and her position did not remain open. SAIC contends that even if Waldrop established a *prima facie* case, it has established legitimate, nondiscriminatory reasons for removing Waldrop: her communication problems with the client and with her supervisor Eddings. SAIC asserts that Waldrop has not offered any evidence to show that Eddings' reasons for reassigning Waldrop were pretext for a discriminatory purpose.

Waldrop contends that she performed her job in a satisfactory manner, as evidenced by the positive performance reviews she received throughout her 20 years at SAIC. Waldrop also points to the fact that shortly before she was removed from the project, the client requested that Waldrop expand her role on the project and assume a more day to day, hands-on management/coordination role. Waldrop also argues that her position was in fact filled by an applicant outside the protected class because SAIC reassigned Waldrop's work to Russ Rieling, a Caucasian American.

Although Waldrop's performance evaluations, including one given just a little more than a month prior to the removal decision, suggest that she was performing satisfactory work, the Court finds that other objective evidence in the record suggests that Waldrop was not in fact satisfying SAIC's legitimate expectations at the time she was removed.

First, the record shows that on April 11, 2008, less than a month before Waldrop was removed, Eddings[3] had a meeting with the client in which the client discussed concerns about the SAIC team's ability to communicate and work effectively with the customer. Doc. No. 39 Ex. 3 at 1. Waldrop's name was mentioned during that discussion, along with the names of several other team members. *Id.* Eddings understood that the client wanted some change in leadership. Doc. No. 35 Ex. 13 at 78.

Then, during a meeting a week later on April 17, 2008, Eddings became concerned about Waldrop's behavior. Eddings found that "when tough questions were asked [Waldrop] became argumentative, confrontational. Her communications became or her tone of voice became aggressive, defensive, [and she] did not accept responsibility for the program." Doc. No. 35 Ex.

---

[3]Eddings served as SAIC's Public Heath Operations Manager and was Waldrop's "next higher level manager' after Nguyen.

13 at 24. Around this time, Eddings spoke with the team members, including Waldrop, about communications problems amongst the NHLBI Project leadership team. Finally, in early May while in a meeting with a client, Eddings used the client's phone to call Waldrop and ask her a question yes or no question. Eddings recalls that "It was a simple answer, essentially yes or no. And [Waldrop] was very vocal in arguing, defending, justifying, and not answering the question." Doc. No. 35 Ex. 13, at 25-26. Eddings' met with the NIH client on May 2, and his meeting notes reflect that the customer had particularized complaints regarding Waldrop that were "specific to her inability to listen and . . . communications style." Doc. No. 39 Ex. 3 at 1. Waldrop was reassigned shortly thereafter.

Taken as a whole, these circumstances suggest that Waldrop was struggling in her day-to-day communications on the project. Given the client's open concern about the team's ability to communicate and work effectively, and Waldrop's instrumental role on that team and her failure to do so, the Court finds that Waldrop was not satisfying SAIC's legitimate expectations at the time she was removed.

Moreover, the Court does not agree that Waldrop's Deputy Project Directory position remained open or was filled by similarly qualified applicants outside the protected class. In fact, Waldrop's position was eliminated and her duties absorbed by Russ Rieling, the Assistant Vice President and Project Director for Informatics, as 20-to-30 percent of his workload. Where a plaintiff's duties are merely absorbed, this is insufficient to meet the fourth prong of the *McDonnell Douglas* test. *See Hardin v. Belmont Textile Mach. Co.*, No. 08-2062, 2009 U.S. App. 2009 WL 4609773, at *4 (finding that a company did not replace the plaintiff with a

worker outside of the protected class where the company merely absorbed the plaintiff's position).

Accordingly, the Court finds that Waldrop has not established a *prima facie* case of national origin discrimination. Even if Waldrop had established a *prima facie* case, SAIC has presented legitimate, non-discriminatory reasons for demoting Waldrop. The Court does not find that Waldrop presented any evidence to show that SAIC's legitimate, non-discriminatory reasons were pretextual. Waldrop does not contend that Eddings bore discriminatory animus toward Iranian-born employees like Waldrop. Rather, Waldrop contends that McCormick influenced Eddings' decision to remove Waldrop because McCormick and Eddings engaged in regular meetings in which Waldrop was discussed, including a meeting that lasted 30 or 40 minutes and occurred shortly before Waldrop was reassigned. Waldrop argues that McCormick's frequent statements that "we have a diverse group" and "we are dealing with diverse cultures" were discriminatory and demonstrate McCormick's inability to see beyond national origin and stereotypes. Waldrop also points to a specific situation in which Waldrop asked McCormick whether another employee, James Chandler, understood his directions to meet particular client needs. James is a Caucasian American. McCormick responded, "I am sure James got it. We have a diverse group here, and some of us can't even write an e-mail."

When construed in the light most favorable to Waldrop, the statements by McCormick reflect discriminatory animus. However, Waldrop also must show not only that McCormick discriminated against Waldrop, but that McCormick was responsible for the decision to reassign Waldrop. If the person allegedly acting pursuant to a discriminatory animus is not the formal decision-maker who engaged in the adverse employment action, then the plaintiff "must present

sufficient evidence to establish that the subordinate was the one 'principally responsible' for, or the 'actual decisionmaker' behind, the action." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 288-89 (4th Cir. 2004) (citing *Reeves v. Sanderson*, 530 U.S. 133, 151-52 (2000)).

In this case, the actual decision-maker was Eddings. McCormick was not Waldrop's supervisor and had no influence on Waldrop's removal and reassignment. The mere fact that McCormick and Eddings discussed Waldrop as part of their regular meetings about the project is insufficient grounds to find that McCormick played an instrumental role in Eddings' decision to remove Waldrop. Waldrop fails to establish that McCormick had any responsibility over the decision to reassign her. Eddings, who served as Waldrop's "next higher level manager" after her supervisor Nguyen, became directly involved in overseeing the project leadership after becoming aware of communications problems in April 2008. Eddings had a fair opportunity to evaluate Waldrop's communication skills during his meetings with Waldrop and through his communications with the client. The extent of Eddings' communications with Waldrop throughout April and early May and his resulting decision to remove her suggest that Eddings was truly the final decision-maker, and there is no evidence that Eddings bore discriminatory animus toward Iranian-born employees like Waldrop. For these reasons, the award of summary judgment to SAIC is appropriate on Waldrop's national origin discrimination claim.

B.    Retaliation

In counts four, five, and six, Waldrop alleges that SAIC retaliated against her in violation of Title VII when, in response to his complaints to her supervisor Nguyen about McCormick's

discriminatory treatment, SAIC reassigned Waldrop. SAIC contends that Waldrop cannot establish a *prima facie* case under these facts.

Title VII makes it unlawful for "an employer to discriminate against any of [its] employees . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 200e-3(a). Protected activity of an employee, therefore, can take the form of opposing any practice made unlawful under Title VII. The Court analyzes a retaliation claim using the *McDonnell Douglas* framework. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). A *prima facie* case for retaliation exists where: (1) the plaintiff engages in protected activity; (2) an adverse employment action occurs against the plaintiff; and (3) there is a causal connection between the protected activity and the employment action. *Causey*, 162 F.3d at 803. The plaintiff's burden in this regard is "not onerous"; it requires only that he prove each element by a preponderance of the evidence. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The protected activity cited by Waldrop is her lodging of five-to-ten informal complaints regarding McCormick's alleged discriminatory conduct, during the time between late 2007 and March or April 2008. This activity is protected under the opposition clause of § 2000e-3(a). *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) ("The opposition clause has been held to encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures."). Thus, Waldrop has alleged that she engaged in a protected activity and the first element of the *prima facie* case is satisfied. The Court also finds that

Waldrop suffered an adverse employment action given that she was removed from her position and lost income of $84,754.12 while searching for a new position within SAIC.

However, Waldrop has not alleged a sufficient nexus between her internal complaints and her reassignment. While Waldrop asserts that she complained about McCormick to Nguyen several times, including within a month or two of her removal, Eddings, the supervisor responsible for Waldrop's reassignment, was not aware of these complaints other than Waldrop's initial complaint in December 2007. Given the five-month gap between the initial complaint of which Eddings was aware and Waldrop's removal in May 2008, Waldrop cannot show a causal connection between her complaints and the reassignment. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Co. Sch. Dist. V. Breeden*, 532 U.S. 268, 273 (2001) (per curiam). The Fourth Circuit has held that a lapse of three to four months between the protected activity and the alleged retaliation is "too long to establish a causal connection by temporal proximity alone." *Pascual v. Lowe's Home Centers, Inc.*, No. 05-1827, 2006 WL 2226571, at *3 (4th Cir. 2006) (per curiam); *cf. Brockman v. Snow*, No. 06-1004, 2007 WL 493926, at *4 (4th Cir. 2007) (three months "is sufficiently proximate to satisfy the requirement"). Here, the fact that Waldrop was removed from her position five months after Eddings was aware of any complaint, by itself, is insufficient to support a claim that the events are causally linked. Furthermore, Waldrop has presented no evidence other than her subjective belief to show that she was transferred because she complained to Nguyen. Waldrop's retaliation claim also fails because, for the reasons stated in the discrimination section above, the Court

finds that SAIC presented legitimate reasons for reassigning Waldrop that Waldrop has not shown to be pretextual. Accordingly, Waldrop's retaliation claim must also be dismissed.

C.      State Law Claims

Pursuant to 28 U.S.C. § 1367(c), the Court has discretion to retain or dismiss nonfederal claims where, as here, the federal basis of the action is no longer applicable. District courts in the Fourth Circuit "enjoy a wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995). In deciding whether to exercise discretion, courts consider factors such as the "convenience and fairness to the parties, the existence of underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citing *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1998). Ultimately, supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Id.* (quoting *Carnegie-Melon Univ.*, 484 U.S. at 350).

Considering that Waldrop's state law claims are closely related to her Title VII claims, and may be easily dispensed with, the Court will exercise supplemental jurisdiction to address the remaining claims alleging violations of Title 20 of the State Government Article of the Annotated Code of Maryland, and Chapter 27 of the Montgomery County Code, as authorized by Title 20.

Waldrop alleges discrimination and retaliation in violation of Title 20 in the second and fifth counts of her complaint. Waldrop additionally alleges discrimination and retaliation in

violation of Chapter 27 in the third and sixth counts of her complaint. Maryland courts routinely look to Title VII cases to determine the scope of liability under Title 20. *See, e.g.*, *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 818 A.2d 259, 277 (2003) (applying Title VII standards in Article 49B[4] discrimination case).

Although in some instances the interpretations of the analogous state and federal provisions vary, none of those instances appear to be applicable here. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 n.10 (2007) (noting instances in which Maryland appellate courts have interpreted state statutes differently than analogous federal provisions). However, Waldrop does not assert that this case presents such a circumstance, and she addresses the federal and state claims in the same section, citing to federal case law exclusively. Thus, Waldrop's Title 20 claim and Chapter 27 claim fail for the same reasons as those brought pursuant to Title VII.

IV.     **CONCLUSION**

For the foregoing reasons, SAIC's motion for summary judgment is GRANTED. A separate order will follow.

September 9, 2011 ____                              _____/s/_____
       Date                                                     Alexander Williams, Jr.
                                          United States District Judge

---

[4]As discussed above, the former Article 49B has been re-codified as Article 20 of the State Government Article.